**MICROSOFT CORPORATION, et al., Plaintiffs,**

v.

**TAIWAN TRADE CENTER, INC., et al., Defendants.**

**Civil No. 95–2484(SEC).**

United States District Court, D. Puerto Rico.

Dec. 2, 1997.

Nestor Mendez–Gomez, Pietrantoni Mendez & Alvarez, Hato Rey, PR, for Microsoft Corp., Novell, Inc., Lotus Development, Corp. and Symantec Corp.

Jose R. Gaztambide–Aneses, Gaztambide & Plaza, San Juan, PR, Jorge A. Fernandez–Reboredo, San Juan PR, for Computer Mart, Inc.

Jose E. Vila–Barnes, San Juan, PR, for Emec Computer Sales and Service, Inc.

Vincente Santori–Coll, San Juan, PR, Jose A. Rivera–Robles, San Juan, PR, for PC Computer Systems, Inc.

Miriam R. Ramos–Grateroles, Bayamon, PR, for Taiwan Trade Center, Inc.

Federico Calaf–Legrand, Reichard & Calaf, San Juan, PR, for Leading Spect Corp.

Manuel A. Moreda–Toledo, McConnell Valdes, San Juan, PR, Benjamin Acosta–Gonzalez, Roberto Marquez–Sanchez, Law Offices Benjamin Acosta, Jr., San Juan, PR, for Honor International.

Manuel A. Moreda–Toledo, McConnell Valdes, San.Juan, PR, Adrian Mercado, Mercado & Soto, San ·Juan, PR, for Interamerican Systems, Corp.

Rafael Fuster–Martinez, Carlos Martinez–Texidor, Ponce, PR, for Puerto Rican American Ins. Co.

## ORDER

CASELLAS, District Judge:

This case is before the Court on defendants' motion requesting sanctions for plaintiffs' disclosure of terms and conditions of the settlement agreement (**Docket # 178**), which was duly opposed (**Docket # 181**). Upon careful examination of the parties' motions, as well as the arguments which they advanced at the hearing held on November 3, 1997, the Court finds that defendants' request—that the Court forfeit the amount of the judgment against them—should be **DENIED**. Nevertheless, for reasons which are further explained below, the Court believes that plaintiffs engaged in behavior that is sanctionable by the Court, and therefore **ORDERS** them to pay reasonable attorney fees for the post-judgment proceedings which ensued as a.result of their issuing the press release. Plaintiff's request for sanctions and attorney fees is hereby **DENIED**; their request that defendant's motion requesting sanctions (**Docket # 177**) be sealed is nevertheless, **GRANTED**.

**Procedural Background**

This is the aftermath of an action for copyright infringement for the alleged sale and distribution of unauthorized copies of soft-

ware. After a protracted litigation which lasted over a year and a half, and shortly after the Court held a final settlement conference, on August 5, 1997, the above-captioned parties finally agreed to settle this case for an amount to be paid in various installments. At the settlement conference held on June 12, 1997, defendants expressed concern regarding further adverse publicity, and the parties thus agreed that should a settlement be reached, its contents would be sealed. In their final sealed settlement, which was filed with the Court on August 7, 1997, defendants agreed, *inter alia*, that they would "not disclose to any person or to any entity the contents of this agreement unless authorized in writing by plaintiff to do so." *See* ¶ 10 of Agreement. The same was not, however, required of plaintiffs. In fact, both parties conceded that defendants had tried to include a similar provision with regards to plaintiffs, but that plaintiffs objected to it, to the point that its inclusion would have constituted a deal-breaker.

Apparently unsatisfied with the agreement which they had reached, and concerned that any additional negative publicity could harm their business, on the same day they signed the agreement—August 5, 1997—defendants requested a Court order enjoining plaintiffs from publicizing the contents of the agreement on the basis that it was under seal. Plaintiffs were verbally advised about this motion at the meeting; they also received a faxed copy of the motion the following morning. Despite this fact, on August 13, 1997, while the motion was still pending before the Court, plaintiffs' client, the Business Software Alliance ("BSA")[1] issued a press release which essentially stated as follows:

The Business Software Alliance (BSA) and the Taiwan Trade Center reached a favorable agreement in the pending case against the company for the sale and distribution of unauthorized copies of software. As part of this settlement, *Taiwan Trade Center will compensate BSA for the sale of illegal copies of software in its establishments.*

The action against Taiwan Trade Center was conducted last December *when U.S. Federal Marshals raided its facilities,* as well as six (6) other companies specialized in the sale of computer software. These raids came as a result of an investigation conducted by BSA, which *showed these companies were buying, selling and distributing counterfeit products.* The legal actions against the other six companies were settled previously.

"Immediately after the raid, *Taiwan Trade Center agreed to stop this illegal practice,*" Laurie Self, legal counsel for the BSA, commented. "As agreed Taiwan Trade Center *will pay for its past infringement* and commit to the legal distribution of software," Self added.

*See* **Docket # 181**, Exhibit B [Emphasis ours]. The Court issued the order requested by defendant on August 15, 1997, one day after the local press (two major newspapers) published the news.[2] One of the articles included the caricature of a pirate dressed in a business suit, holding computer software and facing a computer. Outraged by plaintiffs' disregard of their pending motion, defendants filed the "motion requesting sanctions for disclosure of terms and conditions of an agreement" which is currently before the Court. On November 3, 1997, this Court held an evidentiary hearing on the matter, at which time defendants testified about the damages which their business allegedly suffered as a result of the negative publicity which they received.

## Analysis

Defendants essentially contend that plaintiffs should be sanctioned because they proceeded to issue the above-mentioned release to the press even though they were well

---

**1.** At the evidentiary hearing held on November 3, 1997, plaintiffs conceded that BSA was an association of which Microsoft Corporation was a member; it further noted that BSA coordinated plaintiffs' copyright litigation and operated from the law offices of Pietrantoni, Méndez & Alvarez, plaintiffs' counsel.

**2.** The order instructed all parties, "including plaintiff Microsoft, Inc., third party defendants, the Business Software Alliance and/or their agents, spokespersons and/or attorneys to abstain, refrain or otherwise divulge any of the contents or clauses of the Agreed Final Judgment and Permanent Injunction."

aware of the fact that defendants' motion was still pending resolution. They also contend that the agreement was filed under seal and that the press release violated the nature and purpose of the sealing process. In their opposition to this motion, plaintiffs counter that the press release only referred to the settlement in general terms; that it did not divulge any of its specific contents, clauses or terms; and that even though it was issued prior to the Court's August 15, 1997 order, it did not violate its mandate. They further noted that the purpose of the press release was merely to inform the public of the resolution of the matter; and that defendants were well aware of the fact that plaintiffs intended to divulge this information because they refused to allow defendants to include a confidentiality clause in the agreement.

■ In support of their motion for sanctions, defendants make reference to 15 U.S.C. § 1116(c)(1)(E)(6).[3] This section provides, in pertinent part, that "[t]he court shall take appropriate action to protect the person against whom an order under this subsection is directed from publicity, by or at the behest of the plaintiff, about such order and any seizure under such order." Although the preceding section contains a salutary norm, we nevertheless agree with plaintiffs' contention that it is inapplicable to the instant proceedings, both because it pertains to trademark violations under the Lanham Act, and because it merely addresses prejudgment procedures.

■ Defendants' reliance on Canon 14 of the Puerto Rico Code of Professional Conduct is similarly misplaced. First of all, the Canons of Professional Ethics of the Commonwealth of Puerto Rico do not govern the conduct of attorneys before this forum. Moreover, even though "the raison d'etre of both the Model Rules and the Puerto Rico Canons of Ethics are akin—to preserve the integrity of the legal profession,"[4] this canon merely precludes "the publishing of details and opinions about pending lawsuits," not post-judgment disclosures. 4 L.P.R.A. Ap. IV-A, Canon XIV.

■ Notwithstanding the foregoing, the Court finds that plaintiffs' decision to file the press release prior to the Court's ruling on this matter constituted an abuse of process on their part. Defendants had the right to assume that the Court's sealed process would protect them from disclosure and that their motion would allow them to effectively present their position before the Court.[5] If plaintiffs believed that defendants' motion was unwarranted, or that it was merely an attempt to obtain through a Court order what they were unable to secure as a result of arms-length negotiation, then they should have let the Court decide instead of rendering its order academic by issuing the press release beforehand.[6] More importantly, however, plaintiffs' decision to allow this press release to be published without first obtaining permission from the Court seems even more disrespectful in light of the fact that at the settlement conference held on June 12, 1997, the Court heard defendants' concerns about undue publicity, and noted that all settlement negotiations were to be kept as confidential as possible, and that the agreement was to be sealed.

■ Based on the preceding reasons, the Court hereby sanctions plaintiff's *counsel*

3. Plaintiffs have correctly noted that the relevant section is not that to which defendants make reference, but rather 15 U.S.C. § 1116(d)(6).

4. *In re Jesus M. Rivera–Arvelo*, 830 F.Supp. 665, 667, fn. 5 (D.P.R.1993).

5. *See In the Matter of Handling of Sealed Documents*, a Standing Order of the District Court, dated October 19, 1983, at 1–2:
Once a document or material is sealed, no person will open or cause the [sic] opening unless expressly ordered to do so. The reproduction, revealing or dissemination of any information obtained as a result of having participated in a sealing process or having become informed of the same, is prohibited—unless ordered by a judge or magistrate in cases under their jurisdiction. Violation or departures from any provision of these procedures shall be brought forthwith to the attention of the Court.

6. The Court understands that the deterrent effect which the publication of such press releases has upon potential infringers is of significant importance to plaintiffs. But rather than disregard defendants' motion, plaintiffs should have brought these issues to the Court's attention through an opposition to this motion.

and ORDERS them to pay defendants reasonable attorney fees for all the proceedings which ensued from the publication of the press release. Defendants shall file a memorandum detailing their reasonable request for attorney fees within the next ten (10) days, and plaintiffs shall have ten (10) days thereafter to file an opposition thereto.

Defendants' request that the judgment against them be forfeited is nevertheless, **DENIED**. Even though at the November 3, 1997 evidentiary hearing, defendants testified that they had lost significant revenues as a result of the adverse publicity, they were unable to establish to the Court's satisfaction that it was this press release, and not the adverse publicity accompanying the original seizure of property of December, 1995, that was responsible for their decrease in sales. The Court believes that, in light of the foregoing, defendants' damages allegations are speculative and should not be granted at this point.

Finally, plaintiffs' request that defendants' motion (**Docket # 178**) be sealed is hereby **GRANTED**. Their motion for sanctions and/or attorney fees is hereby **DENIED**. Defendants shall nevertheless, proceed to immediately comply with the terms of the settlement agreement pursuant to plaintiffs' request (**Docket # 184**). All funds that defendants consigned with the Clerk of the Court should be paid forthwith to the plaintiffs.

**SO ORDERED.**